# Supreme Court of Florida

_____

No. SC17-2050
_____

**THE FLORIDA BAR,**
Complainant,

vs.

**PETER G. HERMAN,**
Respondent.

June 18, 2020

PER CURIAM.

We have for review a referee's report recommending that Respondent, Peter G. Herman, be found guilty of professional misconduct and suspended from the practice of law for eighteen months. We have jurisdiction. *See* art. V, § 15, Fla. Const. As discussed below, we remand this case to the referee for further proceedings and reconsideration in light of this opinion and for the filing of an amended report.

## BACKGROUND

This case arises entirely out of Herman's personal bankruptcy proceeding. More specifically, the case is about certain final disclosures that Herman allegedly

failed to make in that proceeding. The disclosures at issue relate to bonus compensation that Herman hoped to receive after filing his Chapter 7 bankruptcy petition. In November 2017, The Florida Bar (Bar) filed a complaint with this Court alleging that Herman "had an obligation to be forthright" in his bankruptcy financial disclosure forms and that he failed to live up to that obligation.[1]

The complaint alleged that Herman's conduct violated the following Rules Regulating the Florida Bar (Bar Rules): 3-4.2 ("Violation of the Rules of Professional Conduct . . . is a cause for discipline."); 3-4.3 ("[Acts] contrary to honesty and justice may constitute a cause for discipline . . . ."); 4-3.3(a)(1) ("A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal . . . ."); 4-3.4(a) ("A lawyer must not . . . unlawfully obstruct another party's access to evidence or . . . conceal a document or other material that a lawyer knows or reasonably should know is relevant to a pending or a reasonably foreseeable proceeding . . . ."); 4-8.4(a) ("A lawyer shall not . . . violate or attempt to violate the Rules of Professional Conduct . . . ."); and 4-8.4(c) ("A lawyer shall not . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation . . . .").

---

1. The Bar's complaint also alleged that Herman committed misconduct by failing to disclose $46,000 in prepetition transfers to an account beyond his creditors' reach. The referee recommended that Herman be found not guilty on the transfer-related charges, and the Bar has not sought review of that recommendation.

This Court referred the Bar's complaint to a referee for a hearing and recommendation, and the referee made the following findings of fact.

In December 2011, CIB Marine Capital, LLC (CIB) obtained a deficiency judgment of approximately $4.5 million against Herman, based upon the nonpayment of a loan that he personally guaranteed for Esquire Ventures, LLC, in connection with a real estate investment that failed in 2007. *CIB Marine Capital, LLC v. Esquire Ventures, LLC*, No. 2009CA010465 (Fla. 19th Cir. Ct. Dec. 9, 2011). CIB immediately pursued collection proceedings against Herman on the judgment. Then, on February 18, 2012, Herman filed a petition for Chapter 7 bankruptcy as a debtor because he did not have the funds available to satisfy the judgment that had been levied against him. *In re Herman*, 495 B.R. 555 (Bankr. S.D. Fla. 2013).

When Herman initiated his bankruptcy proceeding, he was employed as a "director" with Tripp Scott, P.A. As a director, Herman's salary was determined by Tripp Scott's compensation committee. Additionally, he received an annual performance bonus. However, there was no written contract between Herman and Tripp Scott regarding this compensation package.

Prior to filing for bankruptcy, Herman served as co-lead counsel, along with another Tripp Scott attorney, in two high-value contingency cases. The plaintiffs in those cases prevailed. Under the governing fee agreements, Tripp Scott

received approximately $10 million in combined legal fees. The law firm received the fees after Herman filed his bankruptcy petition, but before March 20, 2012, the date Herman filed the financial disclosure schedules at issue in this case.

Beginning in December 2011 and continuing into early January 2012 (i.e., before he filed for bankruptcy), Herman had sent approximately six emails to the president of Tripp Scott, Edward Pozzuoli, as well as to members of Tripp Scott's compensation committee. Anticipating that the firm would be receiving its fees from the contingency cases, and having heard rumors that fee allocation discussions were already underway within the firm, Herman wrote the e-mails to advocate his position about how the fees should be distributed. Among other things, Herman expressed that he wanted Tripp Scott to be consistent with its historical practices in awarding bonuses. Ultimately, the compensation committee did not allocate bonuses from the fees until August 2012. Herman's bonus was $2.7 million; however, in light of his ongoing bankruptcy proceeding, those funds were placed in trust.

During Herman's bankruptcy proceeding, CIB objected to the petition for discharge, alleging that Herman had: (1) intentionally concealed prepetition assets; (2) failed to disclose prepetition transfers of assets; and (3) made false oaths in connection therewith. Relevant to this case, CIB claimed that Herman intentionally failed to disclose his anticipated bonus from the $10 million fee. In

June 2013, the bankruptcy court held a trial on CIB's and the bankruptcy trustee's objection to Herman's bankruptcy discharge.

At the conclusion of that trial, the bankruptcy court entered a seventy-one-page order denying Herman's petition for discharge. The court concluded that Herman had deliberately concealed his expected bonus share of the $10 million fee and that Herman had done so with the intent to hinder, delay, or defraud his creditors. *In re Herman*, 495 B.R. at 595-97. The bankruptcy court did not consider an advice of counsel defense, because Herman did not timely plead one. The United States District Court for the Southern District of Florida affirmed the bankruptcy court's order. *Herman v. CIB Marine Capital, LLC*, No. 13-cv-62251-KMM (S.D. Fla. Sept. 29, 2014). In light of the nature of the bankruptcy court's findings and the district court's affirmance, the district court forwarded the matter to the U.S. Attorney for the Southern District of Florida and to the Bar.

The hearing on the Bar's complaint included testimony from Herman's bankruptcy attorney, Bart Houston. Houston's testimony centered on two particular schedules to Herman's bankruptcy petition: schedule B and schedule I. Schedule B focuses on property of the estate at the time of the bankruptcy petition. Houston testified that his "unequivocal" advice to Herman was that it was unnecessary to report an interest in Tripp Scott's $10 million fee from the contingency cases, including an interest in the form of Herman's expected bonus,

because the bonus was discretionary and not vested when Herman filed his bankruptcy petition. Schedule I includes question 17, which asks: "Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of [the bankruptcy schedules]." Houston testified that he chose the exact wording in Herman's response: "Annual performance bonus (historically 65,000 – 70,000)." The referee's report says: "Houston explained that he chose this methodology in order to put the Trustee on notice that [Herman] could be expected to receive an intangible bonus in the next year." Herman testified that he relied on Houston's advice in filling out both schedule B and schedule I.

In his Report and Recommendation, the referee recommended that Herman be found guilty of violating the Bar rules charged in the complaint. The referee found that, by failing to disclose his expected bonus from Tripp Scott's $10 million fee, Herman intentionally misled the bankruptcy trustee and Herman's creditors. The referee noted that he based this finding not just on the court orders from Herman's bankruptcy proceeding, but also on the evidence and testimony presented at the hearing in this case. The referee rejected Herman's advice of counsel defense, concluding: "First and arguably foremost, reliance on advice of counsel is not available as a defense in a Bar discipline proceeding." As a sanction, the referee recommended that Herman be suspended for 18 months.

ANALYSIS

On review, the Bar argues that the referee's proposed sanction is too lenient and that Herman should instead be disbarred. Herman in turn challenges the referee's recommended findings and recommendation as to guilt and argues that, in any event, the referee's recommended sanction is too harsh.

Our decision to remand this case to the referee for further proceedings turns on Herman's advice of counsel defense, so we will start there. Our most important precedent on this issue is *Florida Bar v. Adorno*, 60 So. 3d 1016 (Fla. 2011), which involved alleged violations of the Bar's conflict of interest rules, its rules against dishonesty, and its rule prohibiting excessive attorney's fees. We concluded that Adorno violated those rules when he secretly settled a putative class action solely on behalf of the named plaintiffs and "abandoned" the putative class, thereby creating "a windfall for the named plaintiffs and his firm." *Id*. at 1035. In *Adorno*, we declined even to consider the respondent's advice of counsel defense. We cited our earlier decision in *Florida Bar v. St. Louis*, 967 So. 2d 108 (Fla. 2007), for the proposition that advice of counsel "is not a defense available to respondents in Florida Bar discipline cases, unless specifically provided for in a rule or considered as a matter in mitigation." *Adorno*, 60 So. 3d at 1028.[2] We

---

2. In *Adorno*, we erroneously described this as a holding of *St. Louis*. The relevant passage from *St. Louis* appears in the opinion's description of the referee's findings and recommendation, not in the Court's own analysis, which did not

observed that Adorno "had the obligation to act to the benefit of the entire class" and that he could not avoid a finding of misconduct "by attempting to shift blame to others." *Adorno,* 60 So. 3d at 1028.

While we do not fault the referee for interpreting this Court's precedent as he did, the general principle we articulated in *Adorno* is not so unyielding as to preclude consideration of Herman's advice of counsel defense in this case. The reason an advice of counsel defense is usually unavailable in Bar discipline proceedings is that the Bar rules themselves charge Florida lawyers with knowledge of the rules and of "the standards of ethical and professional conduct prescribed by this court." R. Regulating Fla. Bar 3-4.1. But here, Herman does not claim that he relied on the advice of counsel as to the meaning and requirements of any Bar rule. Nor does this case have anything to do with Herman's work as an attorney serving clients. Instead, Herman himself was the client, and the charges in this case are inextricably intertwined with Herman's obligations under federal bankruptcy law. The Bar rules at issue did not require of Herman anything over and above what federal bankruptcy law already required— honesty and good faith in completing his bankruptcy schedules. To the extent that federal bankruptcy law permits an advice of counsel defense to negate a finding of

---

address the advice of counsel defense. *See St. Louis*, 967 So. 2d at 118. This error is of no consequence, however, because we stand by the general principle that an advice of counsel defense is usually unavailable in Bar discipline proceedings.

bad intent, we conclude that such a defense should also be available to Herman in this Bar discipline proceeding.

Where the truthfulness of a debtor's financial disclosures is in dispute, federal bankruptcy law includes an "element of mens rea that involves an assessment of whether the debtor made the false statement 'knowingly and fraudulently,' as opposed to carelessly." *Robinson v. Worley*, 849 F.3d 577, 583 (4th Cir. 2017) (quoting 11 U.S.C. § 727(a)(4)(A) (2012)). In determining culpability, "reliance on counsel generally absolves a debtor of fraudulent intent." *Id*. at 586. But there are conditions on the availability of this defense. The court must determine whether the debtor acted in good faith. To make that showing, the "debtor must demonstrate that he provided the attorney with all the necessary facts and documentation." *Id*. And even then, the defense is unavailable if "it should have been obvious to the debtor that his attorney was mistaken" or if a disclosure is incompatible with the debtor's own knowledge. *Id*. The advice of counsel defense does not negate fraudulent intent "when it is transparently plain that the property should be scheduled." *In re Zizza*, 875 F.3d 728, 732 (1st Cir. 2017) (citation omitted). In short, "[a] debtor may rely on the advice of counsel only when the advice is reasonable." *In re Creasy*, 138 F. App'x 45, 46 (9th Cir. 2005).

Herman is entitled to assert the same advice of counsel defense in this Bar discipline proceeding, subject to the conditions we have just described. All of the

Bar rules at issue in this case prohibit conduct that is knowingly or intentionally dishonest. To establish that Herman is guilty of misconduct, the Bar would have to prove by clear and convincing evidence not only that Herman's bankruptcy disclosures were false or misleading, but also that Herman knew that they were false or misleading. Put differently, the Bar would have to prove that Herman's answers to the questions on his bankruptcy schedules were not made in good faith. The advice Herman received from counsel, along with whether Herman relied on that advice in good faith, is relevant to determining whether the Bar can prove its case.

Without prejudging the merits, we believe that Herman's advice of counsel defense is sufficiently plausible that it cannot be taken off the table without consideration by the referee. Recall that there are two schedules at issue, schedule B and schedule I. Schedule B attempts to identify the property of the bankruptcy estate as of the time the bankruptcy petition is filed (here February 2012). Whether something is property of the estate turns on considerations of both state property law and federal bankruptcy law. A key focus of Herman's bankruptcy case was the extent to which Herman's bonus was discretionary. Herman argued that the bonus was too discretionary for it to be considered property of his bankruptcy estate. The bankruptcy court disagreed, concluding that Tripp Scott's compensation committee "only had discretion to determine what amount, within a

reasonable range, of the $10 million fee would be paid to the debtor based upon his prepetition performance." *Herman*, 495 B.R. at 583.

This dispute continued into Herman's Bar discipline proceeding. The referee heard from experts who reached opposite conclusions on whether bankruptcy law obligated Herman to disclose on schedule B a potential bonus from Tripp Scott's $10 million fee in the contingency cases. Herman's expert testified that the bonus was discretionary and a mere expectancy that did not need to be disclosed on that schedule. Relying heavily on the bankruptcy court's analysis, the Bar's expert witness testified to the contrary. But he acknowledged that in the governing case law "there is some uncertainty as to what the outcome is, not just on the law, but on the facts, that you have to look into the practicalities from a practice issue of how to respond to the questions." The Bar's expert agreed that it was a "fair statement" that the disclosure issue for schedule B "comes down to" whether Herman's bonus was vested or discretionary. In light of the conflicting expert testimony and the acknowledged uncertainty in the case law, Herman deserves to have his advice of counsel defense considered.

The potential merit of Herman's advice of counsel defense as to schedule I is a closer call. Recall that question 17 of that schedule asks: "Describe any increase or decrease in income reasonably anticipated to occur within the year following the

filing of [the bankruptcy schedules]." Herman's answer on this schedule was: "Annual performance bonus (historically 65,000 – 70,000)."

At the hearing, Bar counsel asked Herman: "When you wrote that answer to that question, you weren't referencing any of the fees from [one of the contingency fee cases], were you?" Herman responded:

> That's not true. First of all, this was written by Mr. Houston. I certainly reviewed it and signed it, no question about that. However, in my practice at Tripp, Scott for 30 years, we've always gotten a discretionary bonus at the end of the year for whatever work we had done. Some years, we didn't get bonuses, but if there was going to be an award of a bonus, it was usually toward the end of the year. So, in my mind, based on whatever performance and money that would come in and would be available for a bonus, that would be considered an increase in my salary, an annual performance bonus, and parenthetically, the reason that's parenthetical, is because it says, it gave him a clue, that's what I got in the past, and I would likely get a bonus for 2012.

Later at the hearing, in response to a question from his own attorney, Herman testified that his bankruptcy counsel had told him that there would be follow-up for the trustee to learn more detail about the performance bonus: "For instance, Schedule I, he said, the bonus, likely what will happen is, the trustee will go to your employer and come to you and try to figure out what that might be, and that's exactly what happened in this case."

Bart Houston, Herman's bankruptcy counsel, also testified about schedule I at the hearing. Consistent with Herman, Houston testified that he had authored Herman's response to question 17. Houston answered "no" when he was asked

- 12 -

whether the contingency fee cases had been part of his "thought process" in drafting an answer for the schedule. Houston testified that, because the amount of Herman's bonus was indeterminate, "[y]ou couldn't really pick one out, so I averaged out two or three years and put that number down, and if the trustee wanted to take off from there, he had the information to do it."

The Bar's expert faulted Herman's answer to schedule I, question 17. But the expert's testimony left doubt as to what level of disclosure would have been sufficient. For example, although the testimony is not entirely clear, the expert appeared to indicate that it would have been sufficient for Herman simply to answer "annual bonus," and that the problem with Herman's answer to question 17 is that he added the parenthetical "(historically 65,000 – 70,000)." According to the expert, "the way [Herman] answered the question suggested that that was what he would get." This testimony seemingly ignores the wording of question 17, which asks about *increases or decreases* in income. Because it is undisputed that for 30 years Herman's income has typically included a performance bonus, an answer that conveys information about Herman's bonus "historically" merely provides a baseline from which to measure any such increase or decrease.

Admittedly, there is a heavy factual component to schedule I, question 17, whereas in schedule B the legal issues are more prominent. That is what makes the potential viability of Herman's advice of counsel defense as to schedule I a closer

call. But there are several reasons why the defense cannot be entirely discounted at the threshold, without additional consideration and findings by the referee. First, because the amount of Herman's bonus remained unknown at the relevant time, and because the range of the law firm's discretion was open to dispute, answering question 17 required the exercise of some judgment. Second, the question asks about "reasonably anticipated" increases or decreases in income. Here we observe that the referee made ample findings as to Herman's subjective expectations, but none as to the law firm's perspective (and what it conveyed to Herman) at the time. The picture is incomplete without that information. And finally, the Bar expert's testimony left some doubt as to whether or how far Herman's answer to question 17 strayed from the acceptable conventions of bankruptcy practice. If Herman could conceivably have complied with the governing requirements simply by answering "annual performance bonus" (and omitting the parenthetical about his bonus historically), then Herman's advice of counsel defense might make a difference.

For the benefit of the referee and the parties, we conclude by commenting on two aspects of the referee's report that might come up again on remand. First, as a partial explanation of his decision not to consider Herman's advice of counsel defense, the referee indicated that Herman negated the defense by conducting his own legal research about the requirements of schedule B. Herman and Houston

- 14 -

testified that this research consisted mainly of Herman reading a handful of cases that Houston provided him. Without more, we do not see how this "legal research" cuts against Herman's advice of counsel defense—especially considering that the defense turns in part on whether the debtor/client's reliance on counsel was reasonable and in good faith.

Second, we note that the relevant inquiry in this Bar discipline proceeding is not the prudence of Herman's answers on the bankruptcy schedules. The referee here concluded that the conflicting testimony of the "two learned experts" in this case "serves only to underscore what the District Court Judge observed in his order: 'Clearly, the better course of action in the case of a possible difference of opinion about the law is to air [sic] on the side of disclosure.' " To respond to Herman's advice of counsel defense and to justify a conclusion that Herman is guilty of intentional misconduct, it will not be enough for the Bar to prove that Herman did not resolve close calls by erring on the side of disclosure.

To sum up: we hold that, under the circumstances here, Herman is entitled to present an advice of counsel defense to rebut the charge that he was intentionally dishonest in the schedules to his personal bankruptcy petition. Earlier in this opinion we have described the nature of that defense and the preconditions to its assertion. Here the referee declined to consider Herman's advice of counsel defense at all. And the referee relied significantly (though not exclusively) on a

bankruptcy court order that also did not consider the defense and that the court decided under a lower standard of proof than the clear and convincing evidence standard that governs in a Bar discipline case. Of course, though Herman bears a burden of production to come forward with the evidence necessary to support his advice of counsel defense, the ultimate burden of proof always remains on the Bar.

We remand this matter to the referee for further proceedings and reconsideration and for the filing of an amended report. The referee shall file an amended report within 90 days from the date of this opinion.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, LAWSON, and MUÑIZ, JJ., concur.
COURIEL, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Original Proceeding – The Florida Bar

Joshua E. Doyle, Executive Director, Tallahassee, Florida, Patricia Ann Toro Savitz, Staff Counsel, and Joi L. Pearsall, Bar Counsel, The Florida Bar, Sunrise, Florida,

    for Complainant

David B. Rothman and Jeanne T. Melendez of Rothman & Associates, P.A., Miami, Florida,

    for Respondent